Hear first, we'll hear first from Mr. or Ms. Kirsten Jackson. Good morning. May it please the Court, Kirsten Jackson on behalf of Plaintiff Appellant, ADI Worldlink, L.L.C. The lower court erred in allowing RSUI Indemnity Company to deny coverage for dozens of timely reported 2015 claims, simply because they're similar to a single 2014 claim that RSUI asserts was reported late. Consider this. If the situation was reversed, RSUI would not argue that there was coverage for dozens of late reported claims simply because they were similar to a single timely reported claim. But that is the clear implication of RSUI's argument. Because RSUI would not extend coverage to dozens of late to a single timely reported claim, RSUI should not be allowed to deny coverage here for dozens of timely reported 2015 claims by asserting they're similar to an untimely 2014 claim. Well, you may end up in a different place than you're starting, but let me ask, what is your position on the 2014 claim? Are you seeking coverage for that as well? We would submit that we are entitled to coverage for the 2014 claim. However, we'll acknowledge that no Texas court has decided this issue, but many other courts from other jurisdictions have decided where one claim is made under one policy period and then reported under a subsequent policy period that there is seamless coverage just so long as the policies are No, I cannot. Proceed. So the lower court erred by assuming that the single claim provision meant that if a 2014 claim was not covered due to late notice, then the timely reported 2015 claims are also not covered. This assumption is incorrect for at least two reasons. First, it ignores the plain language of the policy, specifically the policies allocation provision. The allocation provision acknowledges that a single claim can contain both covered parts and uncovered parts and requires that RSUI ensure the covered parts. Applied here, the allocation provision requires RSUI to defend the timely reported 2015 claims, even if they are a single claim with a late reported claim. Tellingly, RSUI's answering brief doesn't address the allocation provision at all. It does not respond to this argument. Furthermore, none of RSUI's cases address an allocation provision, so those cases are distinguishable. Second, the lower court's assumption is also contrary to the case law. In attorneys' insurance mutual of Alabama v. Smith, the Alabama Supreme Court held that an insurance company could not use a single claim provision in an interrelatedness condition to impute late notice to timely reported claims. Now, this case is directly on all fours with the current case. In the Alabama Supreme Court case, you had a first claim that was made during one policy period and then reported during a subsequent policy period. And then you had a second claim that was both undeniably timely made and reported during the second policy period. Now, there, the insurance company tried to argue that using a single claim provision that the second claim was related to in a single claim with the first claim and that because the first claim was late, the second claim also must be denied coverage. And the five esteemed judges from a high court of a sister jurisdiction. So we would urge that that is persuasive as well. Now, let's talk about Gastar. Certainly. The vision with your co-counsel there is different. I'll let you handle that whatever way you like. But it seems to me that the Gastar does not directly apply to the situation here, that in Gastar you weren't talking about two claims with a late notice on the first and the application of an interrelatedness or whatever the term of art is, a clause to that. So tell me why Gastar is really controlling here, or particularly persuasive here. Certainly. Well, first, Gastar is controlling because it's an intermediate Texas decision, and this Court has held that those are controlling cases. But to get Unless we decide that it would, that the Texas Supreme Court would decide otherwise. Exactly. Except for here We need to find it to be consistent with what we think the general approach is of the Texas Supreme Court, or something would have to give us a counterindication. Yes, exactly. And here, essentially, there was two petitions for the Supreme Court to hear this decision. The Supreme Court declined both, so there is no indication that the Supreme Court would reverse Gastar. It appears to have considered the case and decided to leave it alone. But as to why it's directly on point, I know that RCUI has asserted that there is a difference, that RCUI says that it didn't just deny coverage for the 2015 claims, you know, based on the relationship to the 2014 claims, but because the 2014 claim was reported late. I think this misses the point entirely. WorldLink sought coverage under the 2015 policy, and RCUI did indeed deny coverage under the 2015 policy. These policies aren't interchangeable. There's different policy limits, and we believe that WorldLink is entitled to coverage under the 2015 policy. Looking just at the 2015 policy, it's clearly directly on point. In Gastar, you had a claim that was made in a prior policy period, and then you had a second claim that was made during the applicable policy period. And Gastar held that you could not relate back that conflict between the interrelatedness condition and the prior litigation endorsement. It's the same thing here. The prior litigation endorsement says that you can't relate back the 2015 claims to the 2014 claims. So if the 2015 claims stay in the 2015 policy, then late notice or whatever arguments that RCUI has for coverage under the 2014 policy is entirely irrelevant. So this is why we believe Gastar is directly on point. To return to the argument, and I hope I answered your question, but I will attempt to explain it further. My previous two arguments about the allocation provision and the Alabama Supreme Court case addressed the lower court's incorrect assumption that if the 2014 claims and the 2015 claims were a single claim, the 2015 claims must take on the same coverage status as a 2014 claim. But under Gastar, as we've discussed, which is controlling Texas law, the 2014 and 2015 claims are not a single claim in the first place. Under Gastar, the Gastar prevents RCUI from using the interrelatedness condition to treat the timely reported 2015 claims and the 2014 claims as a single claim made under the 2014 policy. Now, the parties have dedicated considerable space in their briefing to addressing the Gastar case. We would direct the court to that briefing, especially on pages 7 to 11 of the reply brief, which shows in chart form the similarities between this case and the Gastar case. And if you review that chart, it shows that there are no material distinctions between this case and the Gastar case. But in short, the essential holding of Gastar is that when parties agree by a prior litigation endorsement that new claims do not relate back to claims filed in previous policy periods, an insurance company cannot use an interrelatedness condition in the policy form as an end run around that agreement. The specific negotiated endorsement must control over the general condition in the policy form. Finally, I would suggest that the lower court's decision ignores basic notions of fairness and equity. But these principles matter. RCUI readily admits that it was in no way harmed or prejudiced by the timing of notice for the 2014 claim, which came during an identical renewal policy. Yet RCUI seeks to deny coverage not only for the 2014 claim, but also for dozens of timely reported 2015 claims. This draconian result isn't required by the policy language or the case law. And as a matter of policy, it doesn't really make much sense to deny coverage for dozens of timely reported claims on the basis of late notice. So with that, we would respectfully request that Your Honors reverse the lower court and find coverage for the timely reported 2015 claims. So unless you have any additional questions for me, I cede the remaining time and my opening back to the court, reserving five minutes for rebuttal. Constantine Amphilis? Amphilis? You're not going to argue at this time? Okay. We'll hear from Mr. Harmon. Good morning. James Harmon, I go by Rick, here for RCUI Indemnity Company. The primary issue for this court to consider is whether the Guest Star opinion, which the party spent a great deal of time briefing, applies under the facts of this case. Guest Star held that an exclusion in the policy could be used to create coverage by essentially reading out the interrelated claims provision in that insurance policy that was issued in that case in order to create coverage. The court essentially held that the interrelated claims provision did not apply. The facts of our case are distinctly different from Guest Star. And starting with the fact that RCUI denied this claim, the first claim, the LAM claim, based on late notice. RCUI did not use the interrelated claims provision to try to backdate the claim to some prior policy period like the carrier did in Guest Star. RCUI denied the claim, the LAM claim, because it was late. There is no dispute, nobody disputes that the LAM claim was not timely filed. There's no dispute that the 2015 claims and the LAM claims are related. They are related, there's no dispute about that. Because they are related, the 2014 claims and the LAM claim and the 2015 claim constitute one claim. And because both of those are one claim that was not timely made, there is no coverage for the claim. And the prior pending litigation exclusion, which is relied on by the Guest Star court to find coverage, has no application. It cannot be used to undo the correct coverage position that RCUI made. In this instance. And that's what would happen because RCUI's position was correct, but the court would have to apply an exclusion in order to create coverage, which this court has repeatedly held it cannot do. Now, I'll address a few of the issues that were raised by World Wings Council. First, the 2014 LAM claim is clearly not covered. It was reported almost six months after the 60-day reporting period ended. Texas law is clear that in a claims made and reporting context,  this court has also held the same thing. And because the claim wasn't timely reported, it's simply not covered. RCUI doesn't have to show that it was prejudice. That's also been made clear by this court and the Texas Supreme Court. So the LAM claim is not covered. The argument that's been raised that somehow there's a seamless coverage because RCUI renewed the policy, no Texas court has held that such an argument can even be made or that claim exists. One of the cases they've cited, the Tussey decision from Alabama, has been roundly criticized by almost every court that has considered it because the court did not follow the policy language. The court ignored the policy language. And in Texas, the policy language has to be enforced. So the LAM claim is not covered. The second argument regarding the allocation provision, that was raised for the first time on appeal. It was never addressed in the summary judgment briefing. It simply has no application here. The reason why we did not respond to that argument in our response is because the allocation clause has no application. The allocation clause is used in situations in which there is a claim and there's covered damages and uncovered damages or covered causes of action and uncovered causes of action. And under that provision, RCUI and the insured are supposed to work together to try to allocate the loss. Here, our position is the entire claim is not covered because the 2015 claim and the LAM claim are one claim and it wasn't timely reported. There is simply nothing to allocate because the entire claim is not covered. And then on the fairness and equity argument, I understand that the result seems harsh here, but it's consistent with the policy language. The Berks court, which we cite in our brief, is a 14th District Court of Appeals case. In Berks, the court said that this interrelated claims provision is like a double-edged sword. And that's right. It is. It's a double-edged sword. Because sometimes it works in favor of the insurer and sometimes it works in favor of the insurer. I disagree with the Gostar court that it is an exclusion. It's a condition in the policy. Now, sometimes it may act as an exclusion, like it did in Gostar, but the provision is meant to aggregate claims together, which can benefit the carrier or it can benefit the insurer. For instance, in a situation where there are large retentions per claim, if the claims are batched together to form one claim, that benefits the insurer. And in fact, here, these are wage and hour claims. There's endorsement on the RSOI policy that there is no coverage for wage and hour claims under the policy. The only way there is coverage for those claims is because RSOI added an endorsement to include coverage for those claims. That endorsement is subject to a $500,000 per claim retention. And now, in the underlying case, I will admit that Worling argued that that endorsement didn't apply because there were more claims than just wage and hour claims in the underlying disputes. However, if that were to apply, they would — Worling would have a $500,000 per claim retention unless the interrelated claims provision applied. Again, in that instance, the clause would work in favor of the insurer because it would batch all the claims together and they would only owe one retention. So I disagree that — I understand that it's unfair in this context, but the clause, it's part of the policy, and sometimes it works in favor of the insured, sometimes it works in favor of the carrier. Let me ask you, counsel, about some of the language in Gastar. I expect you don't fully embrace the analysis and the opinion, but it is what we have in front of us. When read in conjunction with the insuring agreement, Condition C excludes from coverage a claim that is initially made during the policy period, such as we have here, if it is determined to be related to the facts or circumstances underlying another claim prior to the policy period. The Court then goes on for a while and it ends up saying because, absent the Condition C, the claims that were followed during the policy period or claim, perhaps, in Gastar, I forget, that was followed during the policy period would be covered, but because of another provision, it's no longer covered. I find, I, the writer of this opinion, I find these two provisions to be in conflict, and whenever there's conflict and ambiguity, the tie or the ambiguity goes in favor of coverage. I mean, the argument you made here is that there are independent clauses in your policy to serve a variety of purposes, all of which read together. But I think that could have been said about Gastar. And how far that should go and whether, in fact, the Texas Supreme Court would embrace all this, I think we're stuck with Gastar, and that's what we need to apply here. Absent you showing us something, the Texas Supreme Court has indicated disagreement in some way with this kind of analysis. So how is this really different? If we're looking at one provision of the Gastar, whatever the insurance company was, policy, would provide coverage, the Court called that inconsistent and refused to enforce it that way. Why is this really different? The reason I believe it's different, Your Honors, because in Gastar, I think what the Court in Gastar was so troubled by was that the prior pending litigation exclusion in that policy had a date that was in 2000. It was the year 2000. The first policy for the primary carrier didn't incept until 2006. So there was this 6-year window. In fact, the Court referred to it as the coverage window. And I think the Court was troubled by the fact that you had this large space, 6 years, where the Court essentially said by putting that date in, the carrier was suggesting or indicating there could be coverage, and then the insurers denied the claims that were filed within the relevant policy because they said the first claims occurred before the policy period but after 2000. And I believe that that was why the Court saw that there was such a conflict between the prior pending litigation exclusion and the interrelated claims provision. It's kind of hard to apply that there was some rule of law by us that unless absent some lengthy time period fitting what you just described, the policy is enforced as written. True. The difference, though, is a claim was presented in the ‑‑ a claim existed in the first RSUI policy period, and RSUI denied that claim because it was not timely and then used the interrelated claims provision to batch all the claims back to 2014. That was just not the situation in Gestar. I don't know whether the carriers could have done that, whether they could have said it was late notice. Maybe there would have been a different outcome in Gestar if that would have happened. But let me ask you this. That's just not the fact that ‑‑ I'm sorry. Sorry. The provision you're talking about, it seems to me, is not an unusual provision. I mean, you tell me if it is, that the interrelatedness clause, is there not case law in Texas, independent of Gestar, that upholds these sorts of clauses that say if you fail to bring a claim to an early policy period and the later policy covers a related claim, that the two are read together and there's no coverage? Is that a long‑term approach for insurance policies? And there ought to be some case law on it, I would think, that would say we don't write it out of the policy just because, on the one hand, one provision would allow coverage, but when you read another, it disallows it. That's what exclusions do or conditions do. That is correct, Your Honor. And that's what we have argued. And we did cite many cases, most of them, unfortunately, from other jurisdictions that have so held. One of the cases that we cited was the, I think it's health, it's a Florida district court case, federal district court case, that was recently affirmed by the 11th Circuit, I think it's health first, in which dealt with one thing that I think was argued in the reply brief was we didn't cite a single case with the fact pattern like this one. Well, that health first case is exactly this scenario because in health first there were claims made against the insured over a 13, 14‑year period. And the carrier had coverage for a very long period of time during that 14‑year period. And like here, the claims were by different plaintiffs and asserted different claims, but the court held they were all related and essentially batched them all back to the first two policies that the carrier issued. So it is the same fact pattern as this case. There are cases in Texas that have upheld the interrelatedness provision. Again, most of the time when you get disputes on this provision, because I've been involved in some, it's when it's either the insured is arguing that there's only one retention and the insured wants to say, no, there's deductible, no, there's 100, depending on how many claims, or it's a limits issue where the insured wants to say, I get more than one limit, and the carrier is saying, no, you're limited to the one policy and you only get the one limit. Most of the cases that have dealt with this provision are in that context. But I will say that all the cases I've ever read on this provision, it's enforced and it's written, and it's not written out of the policy like the Gestarr court did. Well, you're making Gestarr, it seems to me, an anomaly based on not particularly unusual facts, I would think, situations that predate coverage and then similar situations of claims, potential claims that arise during. If we were to agree with the plaintiffs in this case, what effect, you know, I might ask them for parade of horribles, but really what does that do to an interrelatedness clause? Well, in this context, I understand that Gestarr is out there and it was in the Supreme Court denied review. I don't agree with the decision. And the main reason I don't agree with it is because the court truly did use an exclusion to create coverage that otherwise would not exist. If the prior pending litigation exclusion wasn't in that policy, then the court would have had to hold there was no coverage. The only reason the court found there was coverage was because of the exclusion in the policy. And I'm an insurance lawyer. This is what I do. This is what I've been doing a long time. And I just, I have a real problem with an exclusion being able to create coverage because as long as I've been doing this, all the cases that I've read have said you can't create coverage through an exclusion. But that's what the court did. I realize that it's on the books and the Supreme Court denied the petition, but I simply think that reasoning is wrong. That it's ours to apply. Unless it's a factually distinguishable situation, which I believe we have. It's not reasonably distinguishable, but that's for us to decide. All right, counsel. Keep going. So, I mean, I really don't have anything else I think that I've addressed. If you have any other questions, I'll be happy to address them. But, you know, I just think this is a situation that the district court judge's opinion is very well reasoned. It was based on a very well reasoned opinion written by the magistrate judge. Both of them holding that the Gostara case just doesn't apply under the facts presented here. And I would ask the court to affirm those decisions. Let me ask, I will certainly ask my former Texas Supreme Court justice colleague, is this an appropriate case to certify to the Texas Supreme Court? I'm asking you. I'll ask her later. I don't believe so, Your Honor, because this is a unique situation. I'm not sure how much, whether there's a lot of potential, you know, long-term precedent for this. I think this is a pretty limited fact pattern. I think the court can just decide it based on the facts that exist and distinguish it from the Gostara case and just say it's not applicable here. All right. Counsel. You raised, Ari, when you first stood up about the wage and LRO. If that's in your briefing, I'm sorry, I didn't. No, it was raised in the briefing in the summary judgment phase because the district court didn't even get to that argument, so it's not part of the appeal. But I just wanted to point out that the way this works, it's not always inexorable because if that $500,000 retention applies, then it would be beneficial to WorldLink to only have one and not 50. All right. Do you say the wage and LRO, this is not briefed. I want to understand what the decision, one way or the other, means here. You say there's a wage and hour. It's not an exclusion. It would be a ---- Something covering them. Right. Because normally insurers that issue these kind of policies don't want to insure wage and hour disputes. So the only way you get coverage is through an endorsement, which RSUI added to the clause. The endorsement provided. For only wage and hour claims. That endorsement is subject to a $500,000 retention per claim. Per claim. Per claim. And now, there was a big dispute. I'm not going to deny that WorldLink said that endorsement. There are other claims that are not wage and hour claims. Therefore, we get coverage under the general terms of the policy, and that's only subject to a one-time $500,000 retention. Our position was, no, this is all wage and hour. And so if they're right, and the interrelatedness claim is literally right out of policy under GSTAR, then every one of these claims is going to be subject to a $500,000 retention. And which means that, for the most part, they wouldn't have coverage. I mean, there may be one or two of the claims where the fees exceeded $500,000, but a lot of them wouldn't be covered. Period. When you say these claims are related, but do they clearly involve different employees? Do they involve different time periods? Different time periods, but the allegations in each of the complaints or arbitration proceedings that were filed virtually mirror each other. They're almost all the same claim. And I don't think WorldLink disputes that. I mean, the claims are brought by different people in different venues, but the allegations are virtually the same in every one of them. There are a few exceptions. In California, I think they added some statutory claims that don't exist. I guess I'm having a hard time seeing how they're necessarily related. I mean, they say you all violated the same law, but let's suppose that the water sprinkling system came on every morning at 8 o'clock, and 15 employees slipped and broke a hip on different days. I mean, those are different claims. They're different claims, but the interrelated claims provision is so broadly written that it basically says if it's the same or similar claims or causes of action that are made, the same facts that are asserted, they're all related. There's an explosion. That's every claim that comes out of that explosion is related. Well, yeah, theoretically, I guess that would be true. I don't mean theoretically. What is the law? Well, I mean, the law says that... Right. It's per claim. And the reason why that interrelated claims provision is in there is because the way claims-made coverage works is you're supposed to look at each you're looking at a window of time of a year. And what peers don't want is to have claims being made for ten years, potentially triggering ten claims-made policies. So they put that clause in there in order to pull everything back into one particular coverage year. That's the reason for the provision. That's why it's underwritten that way. Thank you, sir. Ms. Jackson, you have, I think, five minutes on the button. Yes, Your Honor. So I'd just like to address some of the points raised in RCUI's argument. The first one is just a matter of fact. So RCUI asserted that GASTAR was factually distinguishable because there weren't earlier policy periods or earlier policies in place at the time that the very first claims were made. I'd like to submit that that's just simply inaccurate. The proof is actually in the record. It's pages 2648 to 2651. It shows that there was a policy. It was an access policy, and it was there at the time the very first GASTAR suit was made. So in that way, there's no factual distinction between our case and GASTAR. But isn't it fair to say that GASTAR did not refer to that insofar as it's, well, correct me then. No, that is correct. And the reason why GASTAR didn't refer to the earlier policy periods in its decision was because it was really looking at the applicable policy period. Just as we urged the court to look at the 2015 policy period and determine whether there's coverage there, GASTAR did the same. They looked at the time period in which these claims were first made and determined whether there was coverage there or whether that claim needed to be related back to an earlier time period. But I guess my point is the factual distinction that they're trying to raise, which is there were no policies available in the earlier time period, just isn't correct. Well, the factual distinction that's important, it seems to me, from that is that claims that predated were brought, were made before the policy year in question and were not timely filed. And so was that also the case, that the claims were made, no claim was timely made under the earlier policy? No, honestly, the record isn't clear. It's not clear why there might not have been coverage under an earlier policy period. We don't know. Maybe the claims had, maybe the policy limits had been exhausted. Maybe there was a late notice for those first claims. The main point is GASTAR didn't say it was relevant. It seems to me that uncertainty, though, is what the district court here relied on and what, not uncertainty, but the absence of that is what the district court relied on, that GASTAR isn't addressing what do you do under an earlier policy that wasn't complied with and how does that affect an interrelatedness clause in a later policy. And that's just not addressed in GASTAR, regardless of what you want to tell us about the similarity of the facts. No, and that is accurate, but I would submit that the reason why it wasn't addressed in GASTAR is because it's simply not relevant. GASTAR says that you have to look at the applicable policy period. I'm just trying to understand how this works. Let's suppose there had been an explosion in 2014. Certainly. Some employees sued, others didn't. The employees who sued in 2015, their claims were timely in the sense that they were made then. How would that work under the related claims period? Okay, and just to be clear, we're not saying that the interrelatedness condition is read out of the policy. That's inaccurate. In GASTAR, the interrelatedness condition aggregated all the claims that were made in a particular policy year together. It just said that they couldn't be related back to prior policy years. That's the same thing that we're arguing here. So here the interrelatedness condition would act to aggregate the 2015 claims together, and the prior litigation exclusion, which was modified specifically by endorsement, would prevent them from going back and relating to the 2014 claims. I'm asking about my example. There's an explosion in 2014. Yes. Some employees sued in 2014. Some employees sued in 2015. Yes. And are the people, when they sue in 2015, are they deemed to be under the 2014 policy? How does that work? No, they are deemed to be under the 2015 policy because that's the time in which those claims are first made, and there's a prior litigation endorsement that stops them from relating back to 2014. What's the name of that prior litigation endorsement? Well, that is the name of it. It's, well, to be clear, there's a prior litigation exclusion in the policy that purports, that essentially is the same as the interrelatedness condition. It says that any claim first made during the applicable policy period relates back and isn't covered under that policy. And then you have a modification by endorsement, and that's really the heart of GASTAR. It says that you can't, like, if the parties specifically agree that these claims should not relate back, then the insurance company can't use something in the policy form that's just a boilerplate provision to say, oh, we're going to skirt that specific agreement. Is that the one they call number 10, or is that a different one? Yes, that is number 10. Yes, so number 10 is the exclusion, and then there's a specific endorsement that I could, I think the page is 110 of the excerpts of record, but that's just based on memory. And then there's a separate endorsement. That's correct. What's your argument about his retention argument? So the retention argument is an interesting one, but the thing is, we're asserting that the interrelatedness condition does aggregate all the 2015 claims together. We're not saying that the interrelatedness condition disappears. And quite frankly, that's also what was held in GASTAR. GASTAR aggregated the claims that were made, I think it was the 2007 policy period. They aggregated them together. What GASTAR prevents you from doing is saying that all the claims that are made within that particular policy year then relate back to an earlier policy. So the interrelatedness condition still applies for purposes of retention. So one retention would apply to claims that are interrelated, which would be the 2015 claims. It still also applies for policy limits. So only one $5 million policy limit would apply for the 2015 claims. What we're saying is that under GASTAR, these 2015 claims don't go back to 2014. Because of an endorsement? Yes. Because of the change made by endorsement, precisely. And the endorsement is or is not number 10? No. So that's interesting. No. Number 10 in the policy period is actually the original exclusion, and then there's a separate endorsement that appears in the policy that modifies it. Okay. Thank you. Thank you. Unless you have any other questions for me, I know I've gone over my time. No problem. Okay. Thank you very much. Thank you. We'll take the last case.